UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| DEBBIE E. KIMBRELL, | ] | |
| Plaintiff, | ] ] ] | |
| vs. | ] ] ] | 3:09-CV-2252-LSC |
| MICHAEL J. ASTRUE,<br>Commissioner,<br>Social Security Administration, | ] ] ] ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.   Introduction.

Plaintiff, Debbie Kimbrell, appeals from the decision of the Commissioner of the Social Security Administration denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Ms. Kimbrell has timely pursued and exhausted her administrative remedies and the decision of the ALJ is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Kimbrell was fifty-six years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education. (Tr. at 99.) Her past work experiences include employment as a garment sorter and sewing machine operator. *Id.* at 23. In her applications for SSI and DIB, Ms. Kimbrell alleged disability beginning June 11, 2005, due to a heart attack, carpel tunnel syndrome in both arms, and chronic obstructive pulmonary disease. *Id.* at 11, 128, 136, 149.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends

on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and

past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Kimbrell meets the nondisability requirements for a period of disability and DIB and was insured through September 30, 2005.  (Tr. at 13.)  He further determined that Ms. Kimbrell had not engaged in substantial gainful activity since the alleged onset of her disability.  *Id*.  According to the ALJ, Plaintiff's borderline intellectual functioning and coronary heart disease are considered "severe" based on the requirements set forth in the regulations. *Id*. at 14.  However, he found that these impairments neither met nor medically equaled any of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1.  *Id*. at 19.  After determining Plaintiff's Residual Functional Capacity, the ALJ determined Plaintiff is capable of performing past relevant work as a garment sorter.  *Id*. at 23.  According to the ALJ, this work "does not require the performance of work-related activities precluded by the claimant's residual functional capacity."  *Id*.  The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined

in the Social Security Act, from June 11, 2005 through the date of [his] decision." *Id.* at 24.

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Ms. Kimbrell alleges that the ALJ's decision should be reversed and remanded for two reasons. First, Ms. Kimbrell believes that the ALJ erred when he determined that her mental retardation does not meet the requirements of listing 12.05C, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 8. at 4.) Second, Ms. Kimbrell contends that the ALJ failed to afford proper weight to the medical opinion of Dr. Kerr, her treating physician. *Id*. at 7.

A.   Meeting a Listed Impairment.

Plaintiff asserts that the ALJ abused his discretion by finding that her impairments did not meet or equal section 12.05C of the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 8.) Specifically, the ALJ found that Plaintiff has borderline intellectual functioning and coronary artery disease, which, although "severe" when considered together, are not severe enough to meet or medically equal the impairments listed in 20 C.F.R. § 404, Subpt. P, App. 1.  (Tr. at 19.)

A plaintiff is disabled if her impairments meet or equal an impairment in the Listings of Impairments.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). To meet a listing, the plaintiff must "have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525(a)-(d)).  "To equal a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson*, 284 F.3d at 1224 (quoting 20 C.F.R. § 404.1526(a)).  Furthermore, "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria . . . [because] [a]n impairment that manifests only some of

those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir.1987) (claimant must "present specific medical findings that meet various tests" to meet a Listing). Finally, the Court has an "absolute duty" to consider a combination of impairments in order to determine whether there is medical equivalency to a Listing if the listing is defined in terms of functional criteria. *Davis v. Shalala*, 985 F.2d 528, 533-34 (11th Cir.1993).

Listing 20 C.F.R. pt. 404, subpt. P, app. 1, §12.05 provides in pertinent part:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirement[] in [part C] [is] satisfied.
>
> . . . .
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . .

The test of whether a plaintiff's disability meets the requirements of 12.05C is two pronged. *See Edwards by Edwards v. Heckler*, 755 F.2d 1513 (11th Cir. 1985). The first prong is satisfied if the plaintiff can demonstrate she has an IQ between 60 and 69. *Id.* at 1515. Listing 12.00 D6 mandates that

> [w]here more than one IQ is customarily derived from the test administered, i.e. where Verbal, Performance, and Full Scale IQ's are provided, as on the WAIS the lowest of these is to be used in conjunction with 12.05.

*Id.* The second prong requires the plaintiff establish an additional mental or physical impairment significantly affecting the claimant's ability to work. *Id.* The additional impairment does not need to be "severe" by itself; rather, the the impairment's effect on "a claimant's ability to perform 'basic work activities'" must merely be "more than slight or minimal." *Id.*

With regard to prong one, Ms. Kimbrell was referred to Dr. James Crowder for a psychological evaluation. Dr. Crowder conducted an IQ evaluation which revealed Ms. Kimbrell to be mildly mentally retarded with a verbal IQ of 70, a performance IQ of 65, and a Full Scale IQ of 65. (Tr. at 327.) Dr. Crowder additionally administered academic achievement testing

that showed Ms. Kimbrell to currently have reading abilities at the fourth grade level and math skills at the second grade level. *Id*. at 327.

The ALJ, however, rejected Dr. Crowder's diagnosis of mental retardation because of discrepancies in Ms. Kimbrell's school record which indicated relatively good scores in the 10th grade on the California Achievement Test (CAT). (Tr. at 21-22.) Dr. Crowder was apprised of this discrepancy and discussed the issue with Plaintiff, who informed him that she had cheated on her 10th grade test. *Id*. at 346. Dr. Crowder accepted Plaintiff's explanation and, after reviewing her academic record, affirmed the validity of his testing and diagnosis, both by written statement, *id*. at 344-46, and in his testimony at a second hearing. *Id*. at 66-67. Despite Dr. Crowder's continued support of his diagnosis, the ALJ found Plaintiff's explanation of her academic record not credible. *Id*. at 21-22. The ALJ further discounted Dr. Crowder's diagnosis, noting that "perhaps" the claimant's low IQ test scores resulted from an "adjustment disorder" stemming from the loss of a "significant other." *Id*. at 22. Thus, the ALJ found Plaintiff did not meet the requirements of listing 12.05C.

This Court agrees with Plaintiff that "rejection of the only medical evidence of a mental health impairment is not substantial evidence to support the [ALJ's] finding" that Plaintiff is not mentally impaired. *Carril v. Barnhart*, 201 F. Supp. 2d 1190, 1191 (2002) (citing 42 U.S.C. § 421(h); *Wilder v. Chater*, 64 F. 3d 335, 337 (7th Cir. 1995)). The present case is similar to the case presented in *Berryman v. Massanari*, 170 F. Supp. 2d 1180 (N.D. Ala. 2001). In *Berryman*, the ALJ rejected the validity of the IQ scores rendered during a psychological evaluation. On appeal, the district court reversed. The court stated as follows:

> The ALJ's finding that the plaintiff's I.Q. scores were not valid was based solely on his own unsupported opinions as to the plaintiff's mental capacity. The ALJ, therefore, "succumbed to the [forbidden] temptation to play doctor and make [his] own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). If the ALJ was in doubt as to the validity of the plaintiff's I.Q. scores, he should have sought clarification of the test results from [the doctor], or ordered additional testing. Because of the Commissioner's duty to develop the medical record fully and fairly "it is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988)(quoting *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (internal quotation marks omitted).

*Berryman*, 170 F. Supp. 2d at 1185.

This court agrees with the reasoning presented in *Berryman*. While the ALJ in the present case may have had valid reasons for rejecting Dr. Crowder's testimony, he does not have a reason based in conflicting medical evidence. It is the ALJ's duty to fully develop the medical record, and he may not substitute his own judgment for that of a medical expert. *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982). Dr. Crowder's diagnosis, which found Plaintiff to have a full scale IQ of 65, was the only item of medical evidence indicating Ms. Kimbrell's IQ. Dr. Crowder affirmed this diagnosis both at the hearing before the ALJ and in a written statement. If the ALJ did not find this evidence reliable, he should have solicited a second opinion by way of ordering a consultive examination. Unless there is some medical evidence indicating otherwise, the ALJ's conclusion that Plaintiff's IQ is not in the 60-69 range cannot be supported by substantial evidence.

Therefore, the case is remanded to allow the ALJ an opportunity to perform additional testing. This Court offers no opinion as to whether Plaintiff has satisfied prong two of the mental retardation analysis. The ALJ

did not address this issue in his initial opinion.  The ALJ should make this determination on remand if he determines that Plaintiff's mental condition satisfies the requirements of prong one.

B.   Weight Afforded a Treating Physician.

Plaintiff has also asserted that the ALJ erred because he did not afford sufficient weight to the opinion of her treating physician, Dr. Kerr.  (Doc. 8 at 8.)  In determining disability, a treating physician's opinion is to be given "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (internal quotations omitted)).  The weight to be afforded a medical opinion concerning the nature and severity of a claimant's impairments depends upon several factors, including, the examining and treating relationship between the medical source and the claimant, the supporting evidence presented by the medical source, the consistency of the opinion with the record as a whole, and the specialty of the medical source.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  If a physician's opinion is not supported by the evidence, or if the opinion is not consistent with the doctor's own records,

there is cause to discount the opinion. *Crawford*, 363 F.3d at 1159; *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

The ALJ directly stated in his decision that he gave "significant weight" to the opinion of Plaintiff's treating physician. (Tr. at 23.) Plaintiff, however, asserts that this statement is not true. (Doc. 8 at 9.) In August 2008, Dr. Kerr completed a Supplemental Questionnaire as to Plaintiff's Residual Functional Capacity. (Tr. at 339.) As an answer to one of the questions, Dr. Kerr checked a box indicating that Plaintiff's "impairments" could cause her to be absent from work "about two days per month." *Id.* at 342. At the hearing, the vocational expert testified that absenteeism of two days per month would prevent Plaintiff from securing and sustaining gainful employment. *Id.* at 89. It is the Plaintiff's position that, in light of the vocational expert's testimony, the ALJ "obviously did not" give Dr. Kerr's opinion significant weight. (Doc. 8 at 9.) According to Plaintiff, "had the ALJ properly credited Dr. Kerr's opinion a finding of disabled would have been made." *Id.* at 9.

The Commissioner can disregard responses to hypothetical questions where the record fails to support all the elements of the question. *Graham*

*v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986) (upholding the Commissioner's disregard of the testimony of the vocational expert that there was no work that the claimant could perform since the claimant failed to prove an element of the hypothetical question).  A vocational expert's response to a hypothetical question may be relied upon, provided the question "takes into account the claimant's precise condition and limitations." *Holley v. Chater*, 931 F. Supp. 840, 851 (S.D. Fla. 1996).

Although the ALJ questioned the vocational expert regarding Plaintiff's potential for absenteeism, the ALJ had good cause to disregard the response because such a limitation is not supported by the record.  As noted by the ALJ, neither Dr. Kerr's records, nor the other evidence of record, establishes that Plaintiff's coronary artery disease imposed significant limitations on her ability to perform basic work-related activities.  (Tr. at 21.)  Plaintiff suffered a myocardial infarction in June of 2005. *Id.* at 201-13.  However, as noted by the ALJ, the treatment Plaintiff received has been "routine and conservative" and it has successfully controlled her symptoms. *Id.* at 21.  While Dr. Kerr's medical records, which date from June 28, 2005, through September 12, 2008, indicate that Plaintiff complained on a few occasions

about dizziness and headaches, she never made complaints about chest pain or shortness of breath. *Id.* at 259-72, 303-37, 347-57.

The fact that Plaintiff's coronary artery disease does not impose any functional limitations is additionally supported by the remainder of the record. On two occasions, August 2005 and February 2006, Plaintiff visited with a cardiologist, Dr. Estess. (Tr. at 219-20, 224-26.) On both occasions Plaintiff denied feeling any chest pain or shortness of breath. *Id.* Further, a physical examination revealed a regular rate and rhythm with no murmur, run, click, or gallop. *Id.* at 121. Additionally, Plaintiff received a consultative examination by Dr. Frank Gillis, who stated that he did not "see that she needed any type of functional limitations." *Id.* at 274.

As previously noted, the opinion of a treating physician can be discounted where the physician's opinion is not supported by the record as a whole. *See Crawford*, 363 F.3d at 1159. While the ALJ's determination of the Plaintiff's RFC is, for the most part, consistent with Dr. Kerr's assessment, the ALJ excluded Dr. Kerr's opinion about Plaintiff's potential for absenteeism from his decision. The ALJ was within his discretion in electing to discount this portion of Dr. Kerr's RFC questionnaire. For one,

the questionnaire is not clear whether the predicted absences would result from physical limitations. (Tr. at 339-40, 342.) This is noteworthy because the ALJ only gave significant weight to Dr. Kerr's assessment of Plaintiff's *physical limitations. Id.* at 23. However, even if Dr. Kerr's assessment was determined based on his opinion of Plaintiff's physical limitations, the ALJ had substantial evidence to determine otherwise. As discussed above, Dr. Kerr's own treatment records, as well as the records of two other evaluating physicians, indicate that Plaintiff's coronary artery disease did not pose any functional limitations. An ALJ's decision must be affirmed where, as here, it is supported by substantial evidence in the record as a whole. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

The Court finds that the ALJ afforded appropriate weight to the opinion of Plaintiff's treating physician and that the RFC assigned by the ALJ is supported by substantial evidence.

IV.  Conclusion.

Based on the foregoing, and pursuant to this Court's power to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), the Court hereby REVERSES the Commissioner's decision regarding Plaintiff's mental impairment and REMANDS this cause to the Commissioner for further proceedings including, but not limited to, further development of the medical record to determine whether Plaintiff satisfies the analysis under listing 12.05C.

Done this <u>6th</u> day of <u>December 2010</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671